## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse 40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

## MOTION INFORMATION STATEMENT

**Docket Number(s):** _____ **22-1266** _____      **U.S. v. FOY**

**Motion For**   Dismissal of Appeal.

_____

_____

**Set forth below precise, complete statement of relief sought:**

The government requests that the appeal be dismissed.

_____

_____

_____

_____

_____

**MOVING PARTY:** _____ **APPELLEE** _____    **OPPOSING PARTY:** _____ **APPELLANT** _____

☐ Plaintiff     ☐ Defendant

☐ Appellant/Petitioner     ☒ Appellee/Respondent

**MOVING PARTY:** _____ Susan Corkery, AUSA _____    **OPPOSING PARTY:** _____ Jane Meyers, Esq. _____

U.S. Attorney's Office      Law Office of Jane S. Meyers

271-A Cadman Plaza East Brooklyn, N.Y. 11201      60 Remsen Street, Suite 4E, Brooklyn, NY 11201

(718) 254-6286; Susan.Corkery@usdoj.gov      janesmeyers@gmail.com; Tel.# 718-246-6133

Court-Judge/Agency appealed from:    The Honorable Rachel P. Kovner, U.S.D.J., E.D.N.Y.

**Please check appropriate boxes:**      **FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has movant notified opposing counsel (required by Local Rule 27.1):    Has this request for relief been made below? ☐ Yes ☐ No
☒ Yes    ☐ No (explain): _____    Has this relief been previously sought in this court? ☐ Yes ☐ No

_____    Requested return date and explanation of emergency:

Opposing counsel's position on motion:

☐ Unopposed    ☐ Opposed    ☒ Don't Know    _____

Does opposing counsel intend to file a response:    _____

☐ Yes    ☐ No    ☒ Don't Know    _____

Is oral argument on motion requested?    ☐ Yes ☒ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?    ☐ Yes ☒ No If yes, enter date: _____

**Signature of Moving Attorney:**

_____ **/s/** _____    **Date:** 8/2/2022    Service by: ☒ CM/ECF    ☐ Other [Attach proof of service]
SUSAN CORKERY

Form T-1080 (rev.12-13)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
------------------------------ x

DECLARATION IN SUPPORT OF
MOTION TO DISMISS APPEAL

USA v. FOY

Docket No. 22-1266

------------------------------ x

SUSAN CORKERY hereby declares the following under 28 U.S.C. § 1746:

1.    I am an Assistant United States Attorney for the Eastern District of New York.  The United States is the appellee in the above-captioned criminal appeal.  I make this declaration in support of the appellee's motion to dismiss the appeal.

2.    Defendant-Appellant Lakeame Foy has filed a notice of appeal in the United States District Court for the Eastern District of New York (Kovner, J.), appealing his conviction, by a plea of guilty, for being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g) and 924(a) (2).

3.    On October 28, 2021, the defendant executed a plea agreement in which he agreed not to file an appeal or otherwise challenge

2

his conviction or sentence if the term of imprisonment imposed was 57 months or below. (Exhibit 1, p. 3).

4. On October 28, 2021, during his plea allocution, the defendant was specifically advised that he could not appeal if he were sentenced to 57 months' imprisonment or less, and he indicated that he understood this waiver provision. (Exhibit 2, p.16).

5. On June 2, 2022, Judge Kovner sentenced the defendant to 41 months' incarceration. (Exhibit 3, p. 17; Exhibit 4, p. 2).

WHEREFORE, it is respectfully requested that the appellee's motion to dismiss the appeal be granted.

I declare under penalty of perjury that the foregoing is true and correct.

_____/s/_____
SUSAN CORKERY
Assistant U.S. Attorney

Executed on August 3, 2022
Brooklyn, New York

# EXHIBIT 1
**(Plea Agreement)**

LTG:JD

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA        PLEA AGREEMENT

       - against -

                        20-CR-565 (RPK)

LAKEAME FOY,

           Defendant.

– – – – – – – – – – – – – – – – – X

       Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States

Attorney's Office for the Eastern District of New York (the "Office") and LAKEAME FOY (the

"defendant") agree to the following:

       1.      The defendant will plead guilty to sole count of the above-captioned

indictment, charging a violation of 18 U.S.C. § 922(g). The count carries the following statutory

penalties:

           a.      Maximum term of imprisonment: 10 years
                 (18 U.S.C. § 924(a)(2)).

           b.      Minimum term of imprisonment: 0 years
                 (18 U.S.C. § 924(a)(2)).

           c.      Maximum supervised release term: 3 years, to follow any term
                 of imprisonment; if a condition of release is violated, the
                 defendant may be sentenced to up to 2 years without credit for
                 pre-release imprisonment or time previously served on post-
                 release supervision
                 (18 U.S.C. § 3583 (b) & (e)).

           d.      Maximum fine: $250,000
                 (18 U.S.C. § 3571(b)(3)).

e.     Restitution: N/A

f.     $100 special assessment
       (18 U.S.C. § 3013).

2.     The defendant understands that although imposition of a sentence in

accordance with the United States Sentencing Guidelines (the "Guidelines" and "U.S.S.G.") is

not mandatory, the Guidelines are advisory and the Court is required to consider any applicable

Guidelines provisions as well as other factors enumerated in 18 U.S.C. § 3553(a) to arrive at an

appropriate sentence in this case.  The Office will advise the Court and the Probation Department

of information relevant to sentencing, including criminal activity engaged in by the defendant,

and such information may be used by the Court in determining the defendant's sentence.  See 18

U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background,

character, and conduct of a person convicted of an offense which a court of the United States

may receive and consider for the purpose of imposing an appropriate sentence.").  The Office

estimates the likely adjusted offense level under the Guidelines to be 24, which is predicated on

the following Guidelines calculation:

Base Offense Level (§ 2K2.1(a)(2))                                              24

If the defendant clearly demonstrates acceptance of responsibility, through allocution and

subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted,

pursuant to U.S.S.G. § 3E1.1(a), resulting in an adjusted offense level of  22 and a range of

imprisonment of 46 - 57 months, assuming that the defendant falls within Criminal History

Category II.  Furthermore, if the defendant has accepted responsibility as described above, to the

satisfaction of the Office, and if the defendant pleads guilty on or before 10/28/2021 an

additional one-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(b), resulting in an

adjusted offense level of 21.  This level carries a range of imprisonment of 41 – 51 months,

2

assuming that the defendant falls within Criminal History Category II. The defendant stipulates to the above Guidelines calculation.

3.      The Guidelines estimate set forth in paragraph 2 is not binding on the Office, the Probation Department or the Court. If the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court, is, for any reason, including an error in the estimate, different from the estimate, the defendant will not be entitled to withdraw the plea and the government will not be deemed to have breached this agreement.

4.      The defendant agrees not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 57 months or below. This waiver is binding without regard to the sentencing analysis used by the Court. The defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution that is not time-barred on the date that this agreement is signed in the event that (a) the defendant's conviction is later vacated for any reason, (b) the defendant violates this agreement, or (c) the defendant's plea is later withdrawn. The defendant further waives the right to raise on appeal or on collateral review any argument that (1) the statute to which the defendant is pleading guilty is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute. Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum. The defendant waives any right to additional disclosure from the government in connection with the guilty plea. The defendant agrees that with respect to all charges referred to in paragraphs 1 and 5(a) he is not a "prevailing party" within the meaning of the "Hyde Amendment," 18 U.S.C. §

3

3006A note, and will not file any claim under that law. The defendant agrees to pay the special

assessment by check payable to the Clerk of the Court at or before sentencing.

5.     The Office agrees that:

a.     no further criminal charges will be brought against the defendant for
is possession of ammunition, to wit: a 9mm cartridge on or about
November 14, 2020, after having been previously convicted of a
felony, it being understood that this agreement does not bar the use
of such conduct as a predicate act or as the basis for a sentencing
enhancement in a subsequent prosecution including, but not limited
to, a prosecution pursuant to 18 U.S.C. §§ 1961 et seq.;

and, based upon information now known to the Office, it will

b.     make no motion for an upward departure under the Sentencing
Guidelines.

If information relevant to sentencing, as determined by the Office, becomes known to the Office

after the date of this agreement, the Office will not be bound by paragraphs 5(b). Should it be

judged by the Office that the defendant has violated any provision of this agreement, the

defendant will not be released from his plea of guilty but this Office will be released from its

obligations under this agreement, including but not limited to: (a) moving for the additional one-

level downward adjustment for timely acceptance of responsibility described in paragraph 2

above; and (b) the provisions of paragraphs 5(a)-(b).

6.     This agreement does not bind any federal, state, or local prosecuting

authority other than the Office, and does not prohibit the Office from initiating or prosecuting

any civil or administrative proceedings directly or indirectly involving the defendant.

7.     No promises, agreements or conditions have been entered into by the

parties other than those set forth in this agreement and none will be entered into unless

memorialized in writing and signed by all parties. This agreement supersedes all prior promises,

agreements or conditions between the parties. To become effective, this agreement must be

signed by all signatories listed below.

Dated: October 28, 2021
      Brooklyn, New York

                                      BREON PEACE
                                      United States Attorney
                                      Eastern District of New York

By:

                                      JAMES McDONALD
                                      Assistant United States Attorney

                                      On behalf of: LARA TREINIS GATZ
                                      Assistant United States Attorney

I have read the entire agreement and discussed it with my attorney. I understand all of its terms
and am entering into it knowingly and voluntarily.

LAKEAME FOY
Defendant

Approved by:

SUSAN KELLMAN/JIN LEE
Counsel to Defendant

5

# EXHIBIT 2
**(Plea Minutes)**

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,          : 20-CR-565(RPK)
                                   :
                                   :
                                   :
        -against-                  : United States Courthouse
                                   : Brooklyn, New York
                                   :
                                   :
LAKEAME FOY,                       : Thursday, October 28, 2021
                                   : 4:00 p.m.
           Defendant.              :
                                   :
                                   :
- - - - - - - - - - - - - - X

        TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
        BEFORE THE HONORABLE RACHEL P. KOVNER
          UNITED STATES DISTRICT COURT JUDGE

              A P P E A R A N C E S:

For the Government: JACQUELYN M. KASULIS, ACTING U.S. ATTORNEY
                    EASTERN DISTRICT OF NEW YORK
                        271 Cadman Plaza East
                        Brooklyn, New York 11201
                    BY:  JAMES P. MCDONALD
                        Assistant United States Attorney


 For the Defendant:    SUSAN GAIL KELLMAN, ESQ.
                        25 Eighth Avenue
                        Brooklyn, New York 11217

                        LAW OFFICE OF JIN P. LEE
                         30 Wall Street - 8th Floor
                         New York, New York 10005
                        BY:JIN P. LEE, ESQ.


Court Reporter:        LINDA A. MARINO, OFFICIAL COURT REPORTER
                       225 Cadman Plaza East/Brooklyn, NY 11201
                       lindacsr@aol.com
Proceedings recorded by mechanical stenography, transcript
produced by Computer-Aided Transcription.

Proceedings                                                      2

1        THE COURTROOM DEPUTY:  United States of America v.

2   Lakeame Foy.

3        Counsel, please state your name for the record.

4        MR. MCDONALD:  Good afternoon, your Honor.  James

5   McDonald here for Lara Gatz.

6        THE COURT:  Good afternoon.

7        MR. LEE:  Good afternoon, your Honor.  I'm Jin P.

8   Lee, L-E-E, associate counsel.  With me is Susan Kellman,

9   who's lead counsel.

10        THE COURT:  Good afternoon.

11        And good afternoon, Mr. Foy and Ms. Kellman.

12        Everyone is welcome to remain seated during the

13   proceedings unless you want to stand up.

14        I understand that Mr. Foy wants to plead guilty

15   today to the charge in the indictment; is that right?

16        MR. LEE:  That's correct, Judge.

17        THE COURT:  Mr. Foy, that's a serious decision and I

18   have to make sure you're doing that with a full understanding

19   of the charges in this case and the rights and the

20   consequences of a guilty plea, so I want to explain the rights

21   that you'll be giving up if you plead guilty today.  And then

22   there are also a bunch of questions that I have to ask to make

23   sure that you are validly entering a guilty plea.

24        If you don't understand any of the questions that I

25   ask, just let me know, I can always ask in a different way.

```
                        Proceedings                      3
```

1   And if you want time at any point to consult privately with

2   your lawyers, just let me know too, and we can make

3   arrangements for you to do that.

4          Okay?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  I'm going to need you to answer

7   questions under oath today, so I'll ask Mr. Chan to swear

8   Mr. Foy.

9          THE COURTROOM DEPUTY:  Mr. Foy, please stand and

10  raise your right hand.

11         Do you solemnly swear that your answers to the

12  Court's questions will be the truth, the whole truth, and

13  nothing but the truth, so help you God?

14         THE DEFENDANT:  Yes, sir.

15         THE COURTROOM DEPUTY:  Thank you, Mr. Foy.  Pleas be

16  seated.

17         THE COURT:  Mr. Foy, do you understand that you are

18  now under oath and if you answer any of my questions falsely,

19  those questions could be used against you in a prosecution for

20  perjury or for making a false statement?

21         THE DEFENDANT:  Yes, ma'am.

22         THE COURT:  What's your full name?

23         THE DEFENDANT:  Lakeame Robert Foy.

24         THE COURT:  And how old are you?

25         THE DEFENDANT:  I'm 42, ma'am.

```
                         Proceedings                    4
```

1        THE COURT:  And how far did you go in school?

2        THE DEFENDANT:  Eleventh grade.

3        THE COURT:  And are you able to speak and understand

4    English fine?

5        THE DEFENDANT:  Yes.

6        THE COURT:  Have you ever been treated or

7    hospitalized for any kind of mental illness?

8        THE DEFENDANT:  Yes.

9        THE COURT:  What was that?

10        THE DEFENDANT:  Right now, I take psych meds, which

11    is Remeron -- there's a couple of other medications.  I don't

12    really remember the name of them.

13        THE COURT:  What are you taking those medications

14    for?

15        THE DEFENDANT:  Bipolar, chronic depression,

16    personality disorder, anxiety, and chronic depression.

17        THE COURT:  Okay.  Do those medications affect your

18    ability to understand what's going on?

19        THE DEFENDANT:  No.

20        THE COURT:  And aside from taking those medications,

21    have you been under the care of a doctor or a psychiatrist

22    recently?

23        THE DEFENDANT:  Yes.

24        THE COURT:  And what was that for?

25        THE DEFENDANT:  For depression.

Proceedings                                              5

1          MS. KELLMAN:  Your Honor, maybe just a little bit of

2     background.

3          THE COURT:  Yes.

4          MS. KELLMAN:  We spent the last year trying to get

5     Mr. Foy his medications.  He's been bounced at MDC between the

6     medical unit and the psych unit for months and months.  It's

7     only in the last two weeks, two or three weeks, that he's

8     actually finally gotten his medication.  And he's doing so

9     much better with it.

10          THE COURT:  Okay.

11          MS. KELLMAN:  It's a sad thing that he didn't have

12     it for the first year --

13          THE COURT:  Sure.

14          MS. KELLMAN:  -- that he's been -- almost a year.

15          THE COURT:  Sure.

16          Have you ever been treated or hospitalized for any

17     kind of addiction, like drug or alcohol addiction?

18          THE DEFENDANT:  Have I been treated?

19          THE COURT:  Yes, treated or hospitalized for any --

20          THE DEFENDANT:  When I was on parole previously, I

21     was in a treatment program, Alcoholics Anonymous.

22          THE COURT:  Have you taken any drugs aside from the

23     medications that you just mentioned or any other kind of

24     medication or had any alcoholic drinks in the past two days?

25          THE DEFENDANT:  No.

Proceedings                                    6

1        THE COURT:  Is your mind clear in court today?

2        THE DEFENDANT:  Yes, ma'am.

3        THE COURT:  Do you have any difficulty understanding

4   what's going on today?

5        THE DEFENDANT:  No, ma'am.

6        THE COURT:  Does anybody want me to make further

7   inquiry in this area?

8        MR. MCDONALD:  Your Honor, I guess I would request

9   confirmation the Defendant is taking all of the medications

10  currently that are prescribed for him.

11       THE COURT:  Counsel described how you recently had

12  gotten access to these medications.

13       Are you taking all of the medications that are

14  prescribed for you?

15       THE DEFENDANT:  Yes, ma'am.

16       MS. KELLMAN:  Just for the record, Judge, he's not

17  taking them all at the same time.  Because inexplicably, they

18  gave him all five bottles of these medications to hold in his

19  cell.

20       THE COURT:  But you're taking them the way you're

21  instructed to take them.

22       THE DEFENDANT:  Yes, ma'am.

23       THE COURT:  Counsel, have you discussed this case

24  with Mr. Foy?

25       MR. LEE:  We have, Judge.

```
                        Proceedings                    7
```

1          THE COURT:  And does he understand the rights that
2    he would be giving up by pleading guilty today?
3          MR. LEE:  He does.
4          THE COURT:  Is he capable of understanding the
5    nature of these proceedings?
6          MR. LEE:  He is capable, Judge.
7          THE COURT:  Do you have any doubt about his
8    competence to enter a guilty plea today?
9          MR. LEE:  No, not at all, Judge.
10         Ms. Kellman and I have been in contact with Mr. Foy
11   consistently for over -- at this point, six months, and he
12   today is very lucid, as he has been recently.
13         THE COURT:  Have you advised Mr. Foy of the maximum
14   possible penalties that could be imposed in this case?
15         MR. LEE:  We have, Judge.
16         THE COURT:  Have you discussed with him the effect
17   of the sentencing guidelines?
18         MR. LEE:  Yes.
19         THE COURT:  Mr. Foy, have you seen a copy of the
20   indictment with the charge against you?
21         THE DEFENDANT:  Yes, ma'am.
22         THE COURT:  And have you fully discussed that charge
23   and the case in general with your attorneys?
24         THE DEFENDANT:  Yes, ma'am.
25         THE COURT:  So, Count One, which is the only count

Proceedings                                                    8

1    in the indictment, charges you with being a felon in

2    possession of ammunition.  Specifically, it charges that on or

3    about November 14 of last year, knowing that you've previously

4    been convicted of a crime punishable by a term of imprisonment

5    exceeding one year, you knowingly and intentionally possessed

6    a 9mm cartridge.

7             Do you understand that charge?

8             THE DEFENDANT:  Yes, ma'am.

9             THE COURT:  And have you had enough time to discuss

10   with your attorney whether or not to plead guilty to that

11   charge?

12            THE DEFENDANT:  Yes, ma'am.

13            THE COURT:  And are you fully satisfied with the

14   counsel, representation, and advice you've gotten in this case

15   from your attorneys?

16            THE DEFENDANT:  Yes, ma'am.  They're doing a

17   wonderful job.

18            THE COURT:  So, I want to go over your rights to

19   trial and related rights that you'll be giving up if you plead

20   guilty today.

21            The first right is that you have the right to

22   continue to plead not guilty.  Nobody can be forced to plead

23   guilty in a criminal case.

24            Do you understand that?

25            THE DEFENDANT:  Yes, ma'am.

Proceedings                                    9

1          THE COURT:  If you continue to plead not guilty, you

2    would have the right under the Constitution to a speedy and a

3    public trial by a jury; do you understand that?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  At a trail, you would be presumed to be

6    innocent and the Government would have to prove your guilt

7    beyond a reasonable doubt; do you understand that?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  You would also have the right at trial

10   to the assistance of counsel for your defense.  Your

11   attorneys, who have been appointed by the Court, would

12   continue to represent you at the trial and at every other

13   stage of the proceedings.

14         Do you understand that?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  At a trial, you would have the right to

17   see and to hear all the witnesses and to have them questioned

18   in your defense; do you understand that?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  You would have the right not to testify

21   at the trial unless you voluntarily chose to testify in your

22   own defense; do you understand that?

23         THE DEFENDANT:  Yes, ma'am.

24         THE COURT:  You would have the right to compel

25   witnesses to come to Court to testify on your behalf; do you

Proceedings                                                    10

1   understand that?

2          MR. LEE:  Yes, ma'am.

3          THE COURT:  If you decided not to testify or not to

4   put on any evidence at the trial, those facts could not be

5   used against you; do you understand that?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  If you plead guilty today and if I

8   accept your plea, there won't be any trial and you will have

9   waived or given up your right to a trial and the other rights

10  associated with a trial I just described; do you understand

11  that?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  If you plead guilty, I'll simply enter a

14  judgment of guilty on the basis of your guilty plea and the

15  Government will be freed of any responsibility to prove your

16  case.

17         Do you understand that?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  If you plead guilty, I'll also have to

20  ask you questions about what you did in order to satisfy

21  myself that you are actually guilty of the charges or the

22  charge in this case and you'll have to answer my questions and

23  acknowledge your guilt.  And in that way, you'll be giving up

24  your right not to incriminate yourself.

25         Do you understand that?

```
                         Proceedings                    11
```

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  Do you understand all the rights that

3   I've just described?

4           THE DEFENDANT:  Yes, ma'am.

5           THE COURT:  Are you willing to give up your right to

6   a trial and the other rights that I've just discussed with

7   you?

8           THE DEFENDANT:  Yes.

9           THE COURT:  So, I understand you're pleading guilty

10  pursuant to a plea agreement with the Government; is that

11  right?

12          THE DEFENDANT:  Yes.

13          THE COURT:  And I have this agreement in front of

14  me.

15          Is this your signature here on the last page?

16          THE DEFENDANT:  Yes, it is.

17          THE COURT:  Did you have the opportunity to read

18  this agreement and to discuss it with your attorneys before

19  you signed it?

20          THE DEFENDANT:  Yes, I did.

21          THE COURT:  Did you understand the plea agreement

22  before you signed it?

23          THE DEFENDANT:  Yes, I did.

24          THE COURT:  Do you have any questions about the plea

25  agreement as you sit here today?

Proceedings                                                12

1          THE DEFENDANT:  No, ma'am.

2          THE COURT:  Does this plea agreement represent your

3   entire understanding with the Government?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Has anybody made any promises or

6   assurances to you that are not in the plea agreement in order

7   to persuade you to accept the plea agreement?

8          THE DEFENDANT:  No, ma'am.

9          THE COURT:  Has anybody threatened you in any way to

10  persuade you to accept the plea agreement?

11         THE DEFENDANT:  No.

12         THE COURT:  Counsel, were all the formal plea offers

13  that you received from the Government in this case conveyed to

14  Mr. Foy?

15         MR. LEE:  They were, Judge.

16         THE COURT:  So, I already discussed what the charge

17  is in this case.  I want to tell you about the possible

18  penalties for this charge.

19         The maximum term of imprisonment is ten years.

20  There's no mandatory minimum term of imprisonment.  Any term

21  of imprisonment could be followed by a term of supervised

22  release of up to three years.

23         "Supervised release" is just a period of time which

24  you'll be subject to supervision by the probation department

25  after completing any term of imprisonment.  If you're on

Proceedings                                            13

1    supervised release, you'd have to follow the rules of

2    supervised release.  And if you violated those rules, you

3    could be sent back to prison without a jury trial to serve an

4    additional period of up to two years, without any credit for

5    time that you previously served in prison as a result of your

6    sentence and without credit for the time that you spent on

7    post release supervision.

8                Do you understand that?

9                THE DEFENDANT:  Yes, ma'am.

10               THE COURT:  This charge also carries a maximum

11   possible fine of $250,000.  In addition, I have to order you

12   to pay a mandatory special assessment of $100.

13               Are you a United States citizen?

14               THE DEFENDANT:  Yes, ma'am.

15               THE COURT:  So, there's no immigration consequences

16   for me to advise you of.

17               Do you understand the possible consequences of a

18   guilty plea as I've explained?

19               THE DEFENDANT:  Yes, I do.

20               THE COURT:  I want to talk briefly about the

21   sentencing guidelines.

22               The United States Sentencing Commission has issued

23   guidelines for judges to follow in deciding on the sentence in

24   a criminal case.  Those guidelines are advisory, so I don't

25   have to follow them but I will consider them along with all

Proceedings                                    14

1    the facts and circumstances in your case and all the factors

2    that are set out in federal law in determining your sentence.

3              Have you discussed with your attorneys how the

4    sentencing guidelines might apply in your case?

5              THE DEFENDANT:  Yes, I did.

6              THE COURT:  Has the Government estimated what the

7    guidelines range will likely be?

8              MR. MCDONALD:  Yes, your Honor, we have.

9              And there's a stipulation to it, our estimation, as

10   well in the plea agreement, and it's 41 to 51 months.

11             THE COURT:  And is that the defense's estimate as

12   well?

13             MR. LEE:  That's correct, Judge.

14             THE COURT:  So, Mr. Foy, what you should understand

15   is these are just estimates and they could be wrong.  I can't

16   determine what the guidelines range is in your case until the

17   probation department prepares a presentence report that

18   describes the facts, that describes the relevant law, and then

19   you have and the Government have the opportunity to read that

20   report and to challenge anything you think the report got

21   wrong.

22             Do you understand that?

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  Do you understand that the sentence I

25   impose could be different from any estimate that you've gotten

Proceedings                                                   15

1    from the Government or from your attorney or from anywhere

2    else?

3               THE DEFENDANT:  Yes, your Honor.

4               THE COURT:  As you sit here today, there's no

5    guarantee about any particular guidelines range.

6               Do you understand that if the advisory guidelines

7    range that the probation department calculates or that I

8    calculate is different from the guidelines range that your

9    attorney might have advised you of or that you expect, you

10   won't be able to take your guilty plea back?

11              THE DEFENDANT:  I understand.

12              THE COURT:  And also, as we sit here today, there's

13   no way for you to know what your ultimate sentence will be.

14              Do you understand that if the ultimate sentence I

15   impose is different from what you hope for or what you expect,

16   you won't be able to take your guilty plea back?

17              THE DEFENDANT:  Yes, ma'am.

18              THE COURT:  You should also understand that there's

19   no parole in the federal system and that if you're sentenced

20   to prison you won't be released on parole.  "Parole" is just

21   release before the completion of a sentence.

22              Do you understand that?

23              THE DEFENDANT:  I do.

24              THE COURT:  Under some circumstances, you or the

25   Government would have the right to appeal any sentence that I

Proceedings                                    16

1   impose in this case.  But this plea agreement contains an

2   appeal waiver.

3           Can I ask the parties, maybe I'm just not always up

4   to date on how these provisions are written.  This is a

5   provision that waives any appeal if the sentence is 57 months

6   or below and the guidelines range is 41 to 51.

7           MR. MCDONALD:  That's correct.

8           That guidelines range was with the additional point

9   added.  And the appeal waiver is calculated in our office

10  policy not including the third point --

11          THE COURT:  Got it.

12          MS. KELLMAN:  By the way, Judge, this is not the

13  policy in the Southern District.

14          THE COURT:  Yes.

15          Do you understand that in this plea agreement, if

16  you plead guilty pursuant to this agreement, you will have

17  waived or given up your right to appeal or collaterally attack

18  any part of your sentence as long as I impose a sentence of 57

19  months or less of imprisonment?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  Do you have any questions about the

22  rights that you would be giving up by pleading guilty or the

23  penalties associated with this charge or the plea agreement or

24  the nature of the charges or anything else related to this

25  case?

Proceedings                                    17

1           THE DEFENDANT:  No, your Honor.

2           THE COURT:  Are you ready to plead guilty today?

3           THE DEFENDANT:  Yes, ma'am.

4           THE COURT:  Counsel, do you know of any reason why

5    your client should not plead guilty today?

6           MR. LEE:  No, Judge.

7           THE COURT:  Mr. Foy, what is your plea to the charge

8    in the indictment?

9           THE DEFENDANT:  Guilty, your Honor.

10          THE COURT:  Are you making that plea voluntarily and

11   of your own free will?

12          THE DEFENDANT:  Yes, I am.

13          THE COURT:  Has anybody threatened you or forced you

14   to plead guilty?

15          THE DEFENDANT:  No, your Honor.

16          THE COURT:  Other than your plea agreement with the

17   Government, has anybody made any promises that caused you to

18   plead guilty?

19          THE DEFENDANT:  No, your Honor.

20          THE COURT:  Has anybody made any promises to you

21   about what your sentence will be?

22          THE DEFENDANT:  No.

23          THE COURT:  What is it that you did that makes you

24   guilty of the charge in the indictment?

25          THE DEFENDANT:  On November 14, 2020, at 1580 East

Proceedings                                          18

1    107th Street in Brooklyn, I possessed a 9mm Luger bullet.  I

2    previously was convicted of assault in the second degree, on

3    April 11, 2003, and I was a felon in New York.  So, at the

4    time I possessed this ammunition, I was basically in the wrong

5    and I knew I was in the wrong.

6                THE COURT:  You knew you had been convicted of a

7    felony --

8                THE DEFENDANT:  I knew I was in the wrong for having

9    it in possession on me.

10               THE COURT:  When you had the ammunition, you knew

11   that you had been previously convicted of a crime --

12               THE DEFENDANT:  I was already a felon.

13               THE COURT:  Government, if this case went to trial,

14   would you present evidence that this cartridge was made

15   outside of the State of New York?

16               MR. MCDONALD:  Yes, we would, your Honor.

17               THE COURT:  And I take it that's not something the

18   defense is disputing.

19               MR. LEE:  That's correct, your Honor.

20               THE COURT:  Any further allocution that the

21   Government thinks is necessary?

22               MR. MCDONALD:  No, your Honor.

23               THE COURT:  Based on my observations of Mr. Foy and

24   his demeanor in court and his answers to my questions and the

25   representations of his counsel, I find that Mr. Foy is fully

Proceedings                                    19

1    competent and capable of entering an informed plea, that he's

2    aware of the nature of the charges and the consequence of a

3    guilty plea, and his plea is knowing and voluntary and

4    supported by an independent basis in fact that contains the

5    essential elements of the offense, and I, therefore, accept

6    the plea of guilty to that count in the indictment.

7           Mr. Foy, the next step is that the probation

8    department will prepare a presentence report, and they'll ask

9    you to give information for that report.

10          Counsel, should I note that you want to be present

11   for that interview?

12          MR. LEE:  Yes, Judge.

13          THE COURT:  After that report is prepared, you and

14   your attorneys will have the opportunity to read the report

15   and make any objections to the report in advance of

16   sentencing.

17          Do we have a date of sentencing, Mr. Chan?

18          THE COURTROOM DEPUTY:  March 2 at 2 p.m.  March 2 at

19   2 p.m.

20          THE COURT:  Does that date work for the parties?

21          MR. MCDONALD:  Yes, your Honor.

22          MR. LEE:  Yes, your Honor.

23          THE COURT:  Okay.  Great.

24          Anything else for us to take care of today?

25          MR. MCDONALD:  Not from the Government, no, thank

```
                        Proceedings                        20

1    you.

2              MR. LEE:  Nothing from the defense.

3              THE COURT:  Great.  We'll see everybody in March.

4              MS. KELLMAN:  Thank you, Judge.

5

6              (Matter concluded.)

7

8                            ooo0ooo

9

10    I (we) certify that the foregoing is a correct transcript
      from the record of proceedings in the above-entitled matter.
11
                  /s/ Linda A. Marino              July 15, 2022
12                 LINDA A. MARINO                     Date

13

14

15

16

17

18

19

20

21

22

23

24

25
```

# EXHIBIT 3
**(Sentencing Minutes)**

1

```
 1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
 2
   - - - - - - - - - - - - - - - -X
 3  UNITED STATES OF AMERICA,     : 20-CR-565 (RPK)
                                  :
 4          Plaintiff,            :
                                  : United States Courthouse
 5        -against-               : Brooklyn, New York
                                  :
 6  LAKEAME FOY,                  :
                                  : Thursday, June 2, 2022
 7          Defendant.            : 4:30 p.m.
   - - - - - - - - - - - - - - - -X
 8

 9          TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
             BEFORE THE HONORABLE RACHEL P. KOVNER
10                UNITED STATES DISTRICT JUDGE

11              A P P E A R A N C E S :

12  For the Government:      BREON S. PEACE, ESQ.
                             United States Attorney
13                           Eastern District of New York
                             271 Cadman Plaza East
14                           Brooklyn, New York 11201
                             BY:  JACK DENNEHY, ESQ.
15                                Assistant United States Attorney

16  For the Defendant:       SUSAN G. KELLMAN, ESQ.
                             25 Eighth Avenue
17                           Brooklyn, New York 11217

18                                AND

19                           THE LAW OFFICE OF JIN P. LEE
                             30 Wall Street
20                     `     Eighth Floor
                             New York, New York 10304
21                           BY:  JIN PING LEE, ESQ.

22  Court Reporter:       DAVID R. ROY, RPR
                          225 Cadman Plaza East
23                        Brooklyn, New York 11201
                          drroyofcr@gmail.com
24
   Proceedings recorded by Stenographic machine shorthand,
25  transcript produced by Computer-Assisted Transcription.
```

Proceedings                                    2

1            P R O C E E D I N G S

2                   --oo0oo--

3         (In open court.)

4         THE COURTROOM DEPUTY:  United States of America

5    versus Lakeame Foy.

6         Good afternoon.  Counsel, please state your name

7    for the record.

8         MR. DENNEHY:  For the Government, Jack Dennehy

9    D-E-N-N-E-H-Y, Your Honor.

10        THE COURT:  Good afternoon.

11        MR. LEE:  Good afternoon, Your Honor.  Susan

12   Kellman for Mr. Foy.  And Your Honor, I'm being assisted

13   today by a member of our mentoring program Mr. Jin Lee, and

14   with Your Honor's permission, he is going to sit at the

15   table.

16        THE COURT:  Sure.

17        MR. LEE:  Good afternoon, Judge.

18        THE COURT:  Good afternoon, Mr. Lee.

19        And good afternoon, Mr. Foy.

20        THE DEFENDANT:  Hi.

21        MS. BING:  Good afternoon, Your Honor.  Jameka

22   Bing with United States Probation.

23        THE COURT:  Good afternoon.

24        All right.  So we are here for sentencing, so let

25   me just go over -- or go over with you all to make sure that

Proceedings                    3

1   I have seen everything that I should have seen, and that you

2   have seen the same material, as well.

3           So I have got the Presentence Investigation

4   Report, which is dated January 26.  There is a sentence

5   recommendation submitted under seal with the same date.  The

6   probation department recommends a sentence of 41 months in

7   custody and two years of supervised release with the

8   following special conditions:  That the Defendant shall

9   submit his person, property, house, residence, vehicle,

10  papers, commuters, other electronic communications, or

11  data-storage devices, or media, or office to a search

12  conducted by a United States Probation Officer.  A failure

13  to submit to a search may be grounds for revocation of

14  release.  The Defendant shall warn any other occupants that

15  the premises may be subject to searches pursuant to this

16  condition.  An officer may conduct a search pursuant to this

17  condition only when reasonable suspicion exists that the

18  Defendant has violated a condition of his supervision, and

19  that the areas to be searched contain evidence of this

20  violation.  Any search must be conducted at a reasonable

21  time and in a reasonable manner;

22          And then to submit the health evaluation and

23  treatment condition recommended, which is that the Defendant

24  shall undergo a mental health evaluation and participate in

25  mental health treatment as approved by the probation

Proceedings                                              4

1   department if deemed necessary by the evaluator.  The

2   Defendant shall contribute to the costs of such services

3   rendered, and/or any psychotropic medications prescribed to

4   the degree he is reasonably able and shall cooperate in

5   securing any applicable third-party payment.  The Defendant

6   shall disclose all financial information and documents to

7   the probation department to assess his ability to pay.  The

8   probation department does not recommend a fine.  It

9   recommends that I order the $100 special assessment that I'm

10  required to impose;

11          Then I've got sentencing memorandums from the

12  parties.  I've got one from Mr. Foy, which is dated May 5th,

13  and it includes as attachments a letter from Mr. Foy's

14  mother and letters from his two sisters, and a treatment

15  document from Central New York State Psychiatric Center.

16  And then I've got a submission from the Government, which is

17  dated May 12th.

18          Is there anything that I have not mentioned that I

19  should have seen?

20          MR. LEE:  No, Your Honor.

21          MR. DENNEHY:  Not for the Government, Your Honor.

22  Thank you.

23          THE COURT:  Okay.

24          All right.  So let's start by talking about the

25  Presentence Investigation Report.

Proceedings                                    5

1          Have you seen this report, Defense Counsel?

2          MR. LEE:  I have, Judge.

3          THE COURT:  And have you reviewed it with your

4    client?

5          MR. LEE:  Yes.

6          THE COURT:  Okay.

7          And Mr. Foy, have you had the chance, sir, to

8    review this report?

9          THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  All right.

11          So let's just talk about the factual contents of

12    the report first.  Are there any objections to the factual

13    recitations in the report?

14          MR. LEE:  No, Judge.

15          THE COURT:  All right.

16          MR. DENNEHY:  Not for the Government.  Thank you.

17          THE COURT:  All right.  So then I'll adopt the

18    factual recitations in the report.

19          And then turning to the guidelines.  I'm obviously

20    not bound by them, but I do have to consider them and so I

21    have to start by accurately calculating them.  And in

22    Paragraphs 14 to 23, the probation department calculates the

23    base offense level as 20 with a 4-level offense -- 4

24    offense-level enhancement, because the firearm was possessed

25    in connection with another felony.  And then with 3 points

Proceedings                                                    6

1   of acceptance of responsibility credit, that yields an

2   offense level of 21.  The PSR calculates Mr. Foy to be in

3   Criminal History Category 2, and that yields a guidelines

4   range of 41 to 51 months.

5              Any objections to those calculations?

6              MR. DENNEHY:  Not by the Government.

7              MR. LEE:  No, Judge, not to the calculations.

8              THE COURT:  All right.

9              Does either party believe there are grounds for a

10  departure in this case within the guideline system as

11  distinct from a variance under *3553(a)?*

12             MR. DENNEHY:  Not for the Government, no.

13             MR. LEE:  Not for the Defendant.

14             THE COURT:  All right.  So then I'll adopt the

15  guidelines calculations.

16             So I am happy to hear from the parties.  I have

17  read the sentencing submissions, so do not feel the need to

18  recapitulate them in their entirety.  But I am happy to hear

19  from both parties on this case, and I think I will recognize

20  the Government first, and then Counsel for Mr. Foy, and then

21  Mr. Foy, if Mr. Foy wants to speak.

22             And maybe I can ask the Government:  One topic, if

23  you want to comment on, is the supervised-release

24  conditions.  Do you have a view on the search condition?  I

25  guess I would welcome any thoughts on that, but also welcome

Proceedings                                        7

1    to hear anything you have to say.

2            MR. DENNEHY:  I would strongly be in favor of that

3    condition, Your Honor.

4            THE COURT:  So I think I would have to make some

5    finding of that, a basis for imposing a search condition.

6    And is there a basis that you would give me?

7            MR. DENNEHY:  Well, in this case, there is

8    attached to the Government's Sentencing Submission, there is

9    evidence that after firing -- using a firearm in this

10   particular incident, the Defendant then returned to a

11   residence with it.  There's a photograph of him in a

12   building elevator holding the gun and presumably he hid it

13   back wherever he had been staying.  So that, I would submit,

14   is the reason.

15           THE COURT:  All right.  Got it.  And I didn't mean

16   to preempt anything else that you wanted to say about the

17   case.

18           MR. DENNEHY:  No, Your Honor.  I'll rely on my

19   submission.

20           I do know that the Defendant has a somewhat

21   problematic past.  He also has a significant-enough criminal

22   history.  This was potentially an extremely dangerous

23   occurrence, and I do believe that a sentence within the

24   advisory guidelines range is warranted and yet, not unduly

25   hash.

Proceedings                                              8

1     THE COURT:  Thank you.

2     So Defense Counsel, I'm happy to hear from you.

3     MR. LEE:  Thank you, Judge.

4     Judge, first of all, thank you for assigning me to

5  work with Ms. Kellman.  And I have known Mr. Foy for almost

6  as long as he has been incarcerated.  December 8th, 2020,

7  was when he was incarcerated for this case, and I remember

8  visiting him on the last Saturday of March of 2021.

9     When I met Mr. Foy, he was quite a different man

10  than he is today.  I remember the last time I actually met

11  with Mr. Foy in person at the MDC, and that was about two --

12  about two weeks ago.  And I said that, you know, I must have

13  met you at least 12, 15 times in person; and he says, Oh, I

14  think it's a lot more than that.  Perhaps I was being a

15  little conservative with my estimate.  But I do know that

16  with Ms. Kellman, we have met him also as much through

17  videoconference.  So I must have met him at least 40 times

18  if you also count the videoconferences.

19     Like I said, I've spoken to Ms. Garland Watson,

20  the mom of Mr. Foy, and I've spoken to her at least double

21  digits and pleading with her to come here today, and I'll

22  sort of address that a little bit later.

23     But in my time that I've met Mr. Foy, I've seen a

24  great change in him.  You know, I've practiced criminal law

25  for quite awhile now, and like a lot of young men, I mean,

Proceedings                                    9

1   especially while incarcerated, I usually could predict a

2   change in them.  And I think sadly, what it comes down to is

3   that a lot of times when there's someone who is sort of in

4   authority -- I'm not saying that I'm an authoritative

5   figure -- but someone who meets with them regularly,

6   promises to do things, and, if perhaps, if an appointment is

7   not kept, apologizes to them and then makes another

8   appointment, that that regularity is what is sort of missing

9   in a lot of young peoples' lives.

10          Now, make no mistake, Mr. Foy is no longer a young

11  man and he knows that.  It took me awhile and Ms. Kellman

12  for him to sort of be honest with us, to basically sort of

13  come to terms of what his life had been like.  As you have

14  read, I'm sure, our sentencing memo, he has had a very

15  difficult life.  I can say that he was diagnosed as dyslexic

16  in the fifth grade.  Also his mom said that he had -- she

17  believes that he has attention deficit hyperactivity

18  disorder, but he was not properly diagnosed.

19          The first time he was diagnosed with posttraumatic

20  stress disorder was in his twenties, and that was while he

21  was in prison.  So what happens then, even though

22  Ms. Kellman and I, we have sworn to be his counsel, I mean

23  in some ways, I felt as I was meeting him, in some ways, I

24  was sort of his social worker, because he was the one who

25  told me -- because there were times when I was like, You're

Proceedings                                      10

1    not right today.  What's going on?  And that's when we

2    discovered that basically he was -- he was actually

3    administering his own medication.

4           At first, I thought, this is like -- we're talking

5    about eight months ago, and I sort of -- sort of disbelieved

6    him in a way.  And during one of our virtual conferences,

7    that literally with Ms. Kellman, myself, and Mr. Foy, he got

8    up -- and I think I told you and I think we've spelled that

9    out in the sentencing memo -- he walked out of that

10   videoconference and came back with the medication, and we

11   took a picture of that.  And we have submitted it in the

12   sentencing memo, as well.

13          So what's sad about all of this is that as much as

14   I wanted his mom to be here, and Mr. Foy, as well, and she

15   said she's going to try to make it, that Mr. Foy in many

16   ways has been sort of been diagnosed and taken care of by

17   institutions; but I'll tell you what he has said is that --

18   and what I have observed is that he is quite a changed man.

19   And the Government has said that he has quite a long

20   history, but if you take a look and we said in the

21   sentencing memo, he has two young kids, and this is the

22   first time that he had been incarcerated and gotten in

23   trouble with the law after the birth of his two young

24   children.  And I think that that's the big difference

25   that -- where he is today.  That he sits in front of you a

Proceedings                                                11

1   man who is in his forties now with two young children and

2   with time to think about what his life has been like.

3         As you know, the MDC is a horrible place, and I

4   won't go through details of that.  It has been a combustible

5   situation.  But one thing about Mr. Foy is, he has not one

6   altercation or infraction during the one year and six months

7   that he's been in there, not one.  Now, he has expressed to

8   me how horrible it was, but he has never in any way gotten

9   into a fight with an inmate or anyone else.

10        In terms of that night of the incident, which is

11  the subject of the single count of this indictment, he's

12  still married to the woman, the mother of his two children,

13  and during that time, there were two men, one of them who is

14  the father of additional children with his still-wife and

15  they razed him.  And, you know, this is -- in no way are we

16  saying that it justified what he did, but he lost it.  And

17  the thing that he valued the most, he thought he would

18  loose.  Sometimes I think there's the saying that We don't

19  know how much we have until we lose it.  And what he has

20  lost is contact with his two children.

21        He has expressed this to me from the get-go how

22  much he has lost and how much he realizes how much he's had.

23  The little things, the struggling with working in which he

24  was working in the Brooklyn Navy Yard, every day, tax paying

25  with a check, as much as he can he wanted to contribute to

Proceedings                    12

1    the upbringing of his two children.  Now he has lost these

2    two years, and he has expressed first of all, how much

3    sorrow for that incident and how stupid it was for him to be

4    sort of baited in a way.

5              If you take a look at his records, this is the

6    first time that he's been arrested for any type of gun

7    possession or gun violence, and I -- for the conditions of

8    MDC and the time that he's served there already, we're just

9    asking for a downward variance, a considerable downward

10   variance.

11             (Pause in proceedings.)

12             MR. LEE:  Actually I was -- I was told by Mr. Foy

13   what the men were telling him:  That he shouldn't -- he

14   wouldn't ever see his kids again and not to come around.  So

15   it was a time in his life in which he is very ashamed of and

16   he said will never happen again.

17             So, Judge, we are asking for a downward variance

18   of -- if we may, perhaps, time served.  He has been there

19   for 18 months now.

20             Thank you.

21             THE COURT:  Thank you.

22             So Mr. Foy, you don't have to make a statement,

23   but you are welcome to make a statement if you want.

24             THE DEFENDANT:  Yes.  Well, good -- good -- good

25   evening.

Proceedings                                                    13

1          As you know, yes, I do have a record.  I have a

2     record, as you already know, but I'm -- that's -- that's not

3     me anymore.  That's the old me.  There's -- you know...

4          On November 20 -- on November 14th of 2020, I

5     fired a semiautomatic handgun multiple times in the

6     direction of a male -- of a male individual.  I'm going to

7     tell you what I done before the Government tell you, because

8     I'm pretty sure you saw the video.  You have footage and

9     everything.

10          I wrote some...  I would first like to apologize

11     for my actions that not only hindered my community sense of

12     safety but also further fracturing my place of -- my place

13     in my community.  I understand -- I understand the full

14     nature of my actions that -- that led me here, and for that,

15     I bear remorse.  My actions could have been -- been -- there

16     are going to be consequences.

17          I'm committed to remove myself from any

18     circumstance that would lead to such uncalled --

19     uncalled-for outburst of gun violence.  I'm smart enough to

20     know that.  Although we cannot control situations out -- out

21     of -- out of our control, we have the responsibility to

22     control things how we respond to them.  I look -- I look

23     forward to redeeming myself and pray that this Court

24     believes that I can.

25          I haven't -- I have been celebrated [sic] for my

Proceedings                                    14

1    children.  I haven't seen them for nearly two years --

2            I don't need to read it.  I'm just going to tell

3    you that I was wrong for what I done, and I'm -- and I'm

4    sorry.  I was -- I was incarcerated for two years now, out

5    of my kids' life.  My kids is like everything, everything,

6    you know.

7            You know, there's no justification for my -- for

8    what I done.  I take full responsibility for what I done,

9    and I can just hope I can move forward, go home, get a job,

10   get my own apartment, and take care of -- take care of my

11   kids.

12           And like I said, the Government, you know, they --

13   they basically -- they basically going to tell you

14   everything that's on paper.  I'm telling you that, yeah, I

15   did -- I -- I had -- I had two State numbers already.  I

16   been in the State before.  I did time before.  But,

17   Your Honor, when -- when I had my baby, my -- my first

18   child -- I had my first child at 35.  When I looked at my

19   baby's eyes when she first opened her eyes, that's all I

20   wanted to do is be with my kids.  It was a situation that

21   took place that went left.  It should have never happened.

22   I was wrong for it.  I could have went about things a

23   different way, but I didn't and this is -- this is my

24   punishment.

25           That's all I got.

Proceedings                                    15

1    THE COURT:  Okay.  Thank you.

2         So in imposing a sentence, I am required to

3    consider some factors that are set out in Federal Law in

4    *Section 3553(a)*, and these include --

5         MS. KELLMAN:  Your Honor, would the Court mind if

6    I spoke for a minute?

7         THE COURT:  Oh, okay.  Sure.

8         MS. KELLMAN:  I think one of the things that we

9    knew coming in about Mr. Foy was that he had some health

10   issues.  And while he can't get any help for that at the MDC

11   for sure, particularly during these last two years when they

12   were lucky to get fed every day peanut butter and jelly.

13   But we did -- after almost a year of battling with them, we

14   did get them to give him his medication.  It's in our

15   papers.  Your Honor saw that they would just hand him five

16   bottles and say "good luck."  But he has changed so

17   dramatically now that he has his medication, and he's

18   properly medicated; and it makes it easier for him the deal

19   with stress, and it makes it easier for him to put things

20   together in a logical fashion.  And it makes it easier for

21   him to think in a logical way.

22         And talking to him now, 16 months later after

23   seeing what he was like for a year, the first year without

24   his medication, it's made such a difference for him.  And in

25   many cases -- I've been hearing the Prosecution say, Well,

Proceedings                                    16

1    as soon as he walks out of here, he's going to stop taking

2    his medication.  What he said to me, Judge, is This has made

3    a difference in my life.  It has made it able for me to go

4    out there and function like everybody else, and for that,

5    I'm always going to be grateful.

6              I just wanted to share that with you.

7              THE COURT:  Sure.  Okay.  Thank you.

8              So you all know that I have to consider some

9    factors set out in Federal Law, and let me just say what a

10   few of them are:  They are the need for the sentence to

11   reflect the seriousness of the crime; to promote respect for

12   the law; to provide just punishment for the offense; to

13   deter criminal conduct by this Defendant and others who seek

14   to engage in this type of crime; and to protect the public

15   from future crime by the Defendant.  Ultimately, I'm

16   required to impose a sentence that's sufficient, but not

17   greater than necessary, to comply with the purposes of

18   sentencing that are set out in *Section 3553(a)*.

19             So I intend to impose a sentence at the bottom of

20   the guidelines in this case, which is 41 months.  And let me

21   just briefly explain why:  The nature and the circumstances

22   of the offense in this case are serious.  In so far as

23   felon-in-possession offenses go, this is sort of the on the

24   very worst side of the facts that you can have where

25   somebody actually shoots at somebody else and somebody could

Proceedings                                    17

1   have been hurt or killed.  So that's a concern to me.

2         The reason that in this case I'm imposing a

3   sentence at the bottom of the guidelines are some of the

4   reasons that Mr. Foy and his Counsel alluded to.  I take

5   Mr. Foy's point, that he has identified his kids as the

6   thing that is most important to him and that he is somebody

7   who is capable of living a productive life outside of

8   custody.  And I think as his Counsel points out, his

9   adjustment at the MDC is some evidence of that, evidence

10  that he is not exactly the same person who he was when he

11  was incarcerated earlier.  I also take into account the

12  conditions at the MDC, both in general, and with respect to

13  Mr. Foy in particular where it does not seem like his

14  medical conditions have been treated appropriately.

15        So those are consideration for me that support a

16  sentence at the bottom of the guidelines range, even though

17  as far as felon-in-possession offenses go, this is, I think,

18  some of the more serious facts that you could have.

19        So I intend to impose a sentence of 41 months of

20  imprisonment to be followed by two years of supervised

21  release with the standard and mandatory conditions of

22  supervised release and this mental-health evaluation and

23  treatment condition recommended by the probation department.

24        I'll impose the search condition recommended by

25  the probation department.  Except I intend to exclude

Proceedings                                    18

1   vehicles and computers and electronic communication and

2   data-storage devices or media because those just don't seem

3   relevant to this kind of offense in a way that Mr. Dennehy

4   articulated that his person, property, house, residence, and

5   office might be.

6           I do not intend to impose a fine, because I find

7   that Mr. Foy lacks the ability to pay a fine.  I'm going to

8   impose the $100 special assessment that I am required to

9   impose.

10          Does either Counsel know of a legal reason why

11  this sentence cannot be imposed as stated?

12          MR. DENNEHY:  Not by the Government.  Thank you.

13          MR. LEE:  Not by the Defense.

14          THE COURT:  So the sentence is imposed as stated.

15  I find that the sentence is sufficient, but not greater than

16  necessary to serve the sentencing purposes set out in

17  *Section 3553(a).*

18          Mr. Foy, to the extent that you did not give up

19  your right to appeal through your guilty plea, you have the

20  right to file an appeal, but any Notice of Appeal would have

21  to be filed within 14 days of the entry of judgment of

22  conviction.  If you cannot afford to pay the cost of an

23  appeal, you can also apply for leave to appeal *in forma*

24  *pauperis* without paying those costs.

25          Do you have a request about designation?

Proceedings                                                    19

1          MS. KELLMAN:  Yes, Your Honor.  We ask that
2    Your Honor recommend a facility in the New York City
3    vicinity.
4          THE COURT:  Okay.  I will make that
5    recommendation.
6          MS. KELLMAN:  Thank you, Your Honor.
7          THE COURT:  Are there any open counts in this
8    case?
9          MR. DENNEHY:  There are not, Your Honor.  Thank
10   you.
11         THE COURT:  Is there anything else for us to
12   address today?
13         MR. DENNEHY:  Not for the Government.
14         THE COURT:  Okay.  Thank you.
15         MR. DENNEHY:  Thank you.
16         MR. LEE:  No, Your Honor.  Not for Mr. Foy,
17   Your Honor.
18         THE COURT:  Okay.
19         All right.  Good luck you, Mr. Foy.
20         (Matter concluded.)
21                         --oo0oo--
22
23    *I (we) certify that the foregoing is a correct transcript*
      *from the record of proceedings in the above-entitled matter.*
24
         */s/ David R. Roy*              *13th Day of July, 2022*
25          *DAVID R. ROY*                        *Date*

# EXHIBIT 4
**(Judgment)**

AO 245B (Rev. 09/19)    Rev. EDNY 2/1/2021 Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

### Eastern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LAKEAME FOY | ) ) ) ) ) ) ) ) ) ) |

**JUDGMENT IN A CRIMINAL CASE**

Case Number:  20-CR-00565-001 (RPK)

USM Number:  21037-509

Jin Ping Lee and Susan Kellman
_____
Defendant's Attorney

## THE DEFENDANT:

☑ pleaded guilty to count(s)    1

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section ❓ | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 922(g), | Felon in Possession of Ammunition | 11/14/2020 | 1 |
| 18 U.S.C. § 924(a)(2) | | | |

    The defendant is sentenced as provided in pages 2 through   7   of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

6/2/2022
_____
Date of Imposition of Judgment


/S/ Rachel P. Kovner
_____
Signature of Judge


Rachel P. Kovner, United States District Judge
_____
Name and Title of Judge

6/4/2022
_____
Date

This page is always included when printing.

Print this page now    Reset this page

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page __2__ of __7__

DEFENDANT:  LAKEAME FOY
CASE NUMBER:  20-CR-00565-001 (RPK)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Forty-one months imprisonment.

☑ The court makes the following recommendations to the Bureau of Prisons:
   The court recommends that the defendant be designated to a facility in the vicinity of New York City.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

   ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

   ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐ before 2 p.m. on _____ .

   ☐ as notified by the United States Marshal.

   ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___7___

DEFENDANT:   LAKEAME FOY
CASE NUMBER:   20-CR-00565-001 (RPK)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

 2 years.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☐ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.



AO 245B (Rev. 09/19)  Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page **4** of **7**

DEFENDANT: LAKEAME FOY
CASE NUMBER: 20-CR-00565-001 (RPK)

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines based on your criminal record, personal history and characteristics, and the nature and circumstances of your offense, you pose a risk to another person (including an organization), the probation officer, with prior approval of the Court, may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

# U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____  Date _____

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3D — Supervised Release

Judgment—Page ___5___ of ___7___

DEFENDANT: LAKEAME FOY
CASE NUMBER: 20-CR-00565-001 (RPK)

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall submit his person, property, house, residence, papers, or office, to a search conducted by a United States probation officer. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

2.The defendant shall undergo a mental health evaluation and participate in mental health treatment, as approved by the U.S. Probation Department, if deemed necessary by the evaluator. The defendant shall contribute to the cost of such services rendered and/or any psychotropic medications prescribed to the degree he is reasonably able, and shall cooperate in securing any applicable third-party payment. The defendant shall disclose all financial information and documents to the Probation Department to assess his ability to pay.

Print this page now     Reset this page

**Include this page when printing?**

 Yes     No

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

| | Judgment — Page | 6 | of | 7 |

DEFENDANT: LAKEAME FOY
CASE NUMBER: 20-CR-00565-001 (RPK)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $ 100.00 | $ | $ | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| TOTALS | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**Include this page when printing?**

Print this page now    Reset this page    ◉ Yes   ○ No



AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page __7__ of __7__

DEFENDANT:  LAKEAME FOY
CASE NUMBER:  20-CR-00565-001 (RPK)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☑  Lump sum payment of $ ___100.00___  due immediately, balance due

☐  not later than _____ , or
☐  in accordance with  ☐ C,  ☐ D,  ☐ E, or  ☑ F below; or

**B**  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

**C**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☑  Special instructions regarding the payment of criminal monetary penalties:
   The special assessment of $100.00 is due immediately.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

| Case Number Defendant and Co-Defendant Names *(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| | | | |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

**Include this page when printing?**

| Print this page now | Reset this page |

 Yes  ◯ No